MERIAM E. HANSEN (SBN 182067)
LAW OFFICES OF MERIAM E. HANSEN
5150 Fair Oaks Blvd., Ste. 101-332
Carmichael, CA  95608-5758
Telephone:  916-402-8344
Email:  meriam@meriamhansenlaw.com

Plaintiff, TRANSCEND TECHNOLOGIES GROUP, INC. (dba benefitsCONNECT®)

UNITED STATES DISTRICT COURT

EASATERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRANSCEND TECHNOLOGIES GROUP, INC. (dba benefitsCONNECT®)<br><br>Plaintiff,<br><br>v.<br><br>MASS GROUP MARKETING, INC., KELLY BEESLEY, and Doe defendants 1 through 10, inclusive,<br><br>Defendants. | CASE NO.<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND BREACH OF CONTRACT** |

Comes now the Plaintiff, TRANSCEND TECHNOLOGIES GROUP, INC. (dba benefitsCONNECT®), and files this complaint against Defendants, MASS GROUP MARKETING, INC. (or "MGM"), KELLY BEESLEY, and Doe defendants 1 through 10, inclusive, alleging in support thereof as follows:

**I.    Jurisdiction and Venue**

1.    This action arises under the Copyright Act of 1976, 17 U.S.C.A. §§ 101 et seq. ("Copyright Act").

2.    This court is vested with subject matter jurisdiction of this action pursuant to Judicial Code, 28 U.S.C.A. § 1338(a).

COMPLAINT - 1

3. Venue lies in this judicial district pursuant to 28 U.S.C.A. § 1400(a) since each defendant resides, has an agent, or may be found in this district.

4. Plaintiff and Defendant MGM are parties to a software licensing agreement that provides that "the laws of the State of California" shall govern.

## II. Parties

5. Plaintiff is engaged in the business of creating, selling, licensing, installing, supporting, and maintaining a web-based employee benefits administration and reporting software program titled *benefits*CONNNECT® (the "Software"). Plaintiff's principal place of business is located in Rancho Cordova, California.

6. Defendant, MASS GROUP MARKETING, INC., is selling, licensing and/or sublicensing a web-based employee benefits administration and reporting software and is thus a competitor of Plaintiff in the same market. MASS GROUP MARKETING, INC. has a website presently located at www.mgmbenefits.com.

7. Defendant, KELLY BEESLEY, is an officer, agent, and/or employee of Defendant, (corporate defendant's name).

## III. Facts Supporting Plaintiff's Copyright Infringement Claim and Breach of Contract Claim

8. Plaintiff incorporates by reference paragraphs 1 to 7 above as if fully set forth herein.

9. Plaintiff has given Defendants notice that Defendants' activities constitute infringement of Plaintiff's copyright and breach of the licensing agreement between Plaintiff and Defendant MGM, and Defendants have continued such activities notwithstanding such notice. Attached hereto as **Exhibit A** is a true and correct copy of a cease and desist demand letter from Plaintiff dated June 3, 2016 that was delivered to Defendants ("Demand"). As of the date of this Complaint, there has been no substantive response to the Demand. Plaintiff

COMPLAINT - 2

incorporates by reference the allegations in the Demand as if fully set forth herein, including the allegations related to the breach of licensing agreement claim against Defendant MGM.

10. Plaintiff is the sole and exclusive owner of an applications software program known as *benefits*CONNNECT®, which is a web-based employee benefits and administration and reporting software that is copyrightable and entitled to copyright protection.

11. In 2010, after a substantial investment of time, effort, and expense, Plaintiff created an original work of authorship fixed in a tangible medium of expression by designing, developing, testing, and manufacturing its Software program.

12. On or about February 2010, Plaintiff first published in the United States and began to offer for sale/sell/license to the public its Software. The Software has been a very successful product and accounts for a significant portion of Plaintiff's revenues.

13. Plaintiff has complied with statutory formalities for registration of copyright. On or about June 20, 2016, Plaintiff applied for registration of its Software with the Registrar of Copyrights and has subsequently confirmed receipt by the United States Copyright Office of the Application, Service Request #1-3604171841 (priority special handling), all required fees, and deposit materials.

14. Defendant, MASS GROUP MARKETING, INC., sells a web-based application for an "online enrollment and administration system" marketed as THEbenefitsHUB, which is in competition with Plaintiff's Software.

15. Defendant, KELLY BEESLEY, has admitted that MGM copied some or all of Plaintiff's Software and incorporated those copied portions of the Software in MGM's so-called "THEbenefitsHUB" competing software by stating that subsequent to MGM's access to the Software, MGM "began modifying [the

COMPLAINT - 3

Software] almost immediately and then destroyed [MGM's] copy of [the Software]."

16. By making unauthorized copies of the Software, by preparing unauthorized derivative software from the Software, and by distributing those copies and/or derivative computer programs, Defendants have willfully infringed, and continue willfully to infringe, Plaintiff's exclusive rights under the Copyright Act, and Defendant MGM has breached the parties' licensing agreement.

17. As a consequence of the foregoing infringement and breach, Plaintiff has suffered, and will continue to suffer, substantial injury to its business and to its ownership rights in the Software.  As a further consequence of the foregoing infringement, Defendants have been unjustly enriched, and will continue to be unjustly enriched, by deriving illegal profits at Plaintiff's expense.

**IV.     WHEREFORE, Plaintiff prays for the following relief:**

1. The issuance of a temporary restraining order enjoining Defendants, and all other persons working in concert with them, from (a) in any way copying or distributing copies of the Software; and (b) in any way copying or distributing copies of THEbenefitsHUB software;

2. The issuance of a preliminary injunction enjoining Defendants, and all other persons working in concert with them, from (a) in any way copying or distributing copies of Software; and (b) in any way copying or distributing copies of THEbenefitsHUB software;

3. The issuance of an order for the seizure and impoundment of all copies of the Software and THEbenefitsHUB, in whatever form such copies may be stored, or of any device used to make such copies, in Defendants' possession, custody, or control;

4. Judgment against Defendants, jointly and severally, awarding to Plaintiff either (a) actual damages in an amount to be determined at trial, together

1  with Defendants' profits derived from their unlawful infringement, or (b) statutory
2  damages, at Plaintiff's election before the entry of final judgment;
3      5.   The issuance of a permanent injunction enjoining Defendants, and all
4  other persons working in concert with them, from (a) in any way copying or
5  distributing copies of the Software; and (b) in any way copying or distributing
6  copies of THEbeneiftsHUB;
7      6.   An award to Plaintiff of its costs and attorney's fees incurred in this
8  action;
9      7.   Accounting for all gains and profits derived by Defendants through
10 infringement of copyright or statutory damages in lieu thereof; and
11     8.   Such further relief as this Court deems just.

13 DATED: June 27, 2016            Respectfully submitted,

                                   LAW OFFICES OF MERIAM E. HANSEN

                                   _____
                                   MERIAM E. HANSEN, ESQ., Attorneys for
                                   Plaintiff, TRANSCEND TECHNOLOGIES
                                   GROUP, INC. (dba benefitsCONNECT®)

COMPLAINT - 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A (Cease and Desist Demand)**

**MH** LAW OFFICES OF MERIAM E. HANSEN

June 3, 2016

**VIA EMAIL: hdeleon@dwlawtx.com**
**AND FIRST CLASS MAIL**

Hector De Leon, Esq.
De Leon and Washburn, P.C.
901 South Mopac Expressway
Barton Oaks Plaza V, Ste. 230
Austin, TX 78746

Re: *TTG Demand to MGM and its President, Kelly Beesley*

Dear Mr. De Leon:

It is our understanding that you will be representing Mass Group Marketing, Inc. ("MGM") and its President, Mr. Kelly Beesley, in a dispute that has arisen between MGM and Transcend Technologies Group, Inc. dba *benefits*CONNECT® ("TTG"), related to the "THE*benefits*HUB" product. If you do not represent MGM and Mr. Beesley, please advise us immediately.

This law office has been retained to represent TTG, the sole and exclusive owner of the copyright and all other rights in and to the benefits administration and reporting software entitled "*benefits*CONNECT® 4.3" ("Work") and its subsequent versions.

Limited Grant of Rights by TTG to MGM and Competition with TTG:

In October of 2010, TTG gave MGM a limited grant of rights to access and use the Work in MGM's business. The parties signed a software license ("Agreement"). In it, "MGM acknowledge[d] that TTG shall retain sole and exclusive ownership of all rights, title, and interest in and to the Software including the copyright pertaining to the Software." (Agreement, at paragraph 1.2.)

It has come to the attention of our client that MGM has begun impermissibly selling, licensing, and sublicensing a software and web-based application for an "online enrollment and administration system" marketed as THE*benefits*HUB. It appears that your clients have willfully, knowingly, and purposefully transitioned from an insurance broker client/licensee of TTG to a direct competitor of TTG. It is also plain to us that your clients are trading on the goodwill of TTG and misleading the public by adopting a confusingly similar marketing scheme,

**MH Law Offices of Meriam E. Hansen**

including by copying such elements as italicizing "benefits" in THE*benefits*HUB (similar to TTG's *benefits*CONNECT®), which we believe is intended to further deceive.

We understand that in recent communications between Mr. Beesley and our client's President, Mr. Troy Underwood, that Mr. Beesley has asserted that MGM has not violated TTG's copyright or breached the Agreement because the Agreement "governs *benefits*CONNECT 4.3 and nothing else." Mr. Beesley also admitted that MGM "began modifying *benefits*CONNECT 4.3 almost immediately and then destroyed [MGM's] copy of *benefits*CONNECT 4.3." It appears that MGM is further admitting that it is selling/licensing a modified version of *benefits*CONNECT® 4.3.

Based on our initial review of the terms of the Agreement and the parties' relationship, it is fair to say that in our many years of practicing intellectual property law, we have not seen such an admitted blatant disregard for the rights of another.

Copyright Infringement against MGM and Mr. Beesley:

Based on the information we have, we are of the view that your clients are infringing our client's copyrighted Work because your clients have impermissibly reproduced, prepared a derivative of, and distributed the Work in violation of the Copyright Act.

Mr. Beesley has asserted that there is no liability because he curiously believes that making modifications to the Work and then destroying the original copy exonerates MGM from exposure. However, these are not valid defenses to a copyright infringement claim.

The term "copying" in the context of copyright infringement cases has come to mean any violation of the copyright owner's "exclusive" rights set forth in 17 U.S.C. § 106, not just literal copying of a work. See, Playboy Enters., Inc. v. Webbworld, Inc., 991 F. Supp. 543, 550-551 (N.D. Tex. Dec. 1997) ("'Copying' is a judicial shorthand for the infringement of any of a copyright owner's exclusive rights). Moreover, a copyright and the physical object are separate items; ownership of the copyright is distinct from physical possession of the work. 17 U.S.C. § 202. Thus, MGM's license and initial physical possession of the Work did not confer any greater rights than those granted under the Agreement.

Indeed, MGM's actions summarized above are in direct and willful contravention of TTG's exclusive rights under the Copyright Act, 17 U.S.C. Section 106, including the rights to reproduce, prepare derivative works, and control distribution of the copyrighted Work.

A copyright owner has the exclusive right "to prepare derivative works based upon the copyrighted work." 17 U.S.C § 106(2).

**MH** Law Offices of Meriam E. Hansen

A "derivative work" is "a work based upon one or more preexisting works, such as a translation … or any other form in which a work may be recast, transformed or adapted." 17 U.S.C. § 101. Consequently, the unauthorized preparation of a derivative work constitutes an infringement, and infringement may occur through modifying software. See, e.g., TracFone Wireless, Inc. v. Technopark Co., Ltd., 281 F.R.D. 683 (S.D. Fla. 2012); Midway Mfg. Co. v. Artic Intern., Inc., 704 F.2d 1009 (7th Cir. 1983) (an accelerated version of "Galaxian" game was a derivative work infringing the plaintiff's copyright in the program); TracFone Wireless, Inc. v. Anadisk LLC, 685 F. Supp. 2d 1304 (S.D. Fla. 2010) (purchasers' activities constituted modification of software and copyright infringement).

Only the copyright owner retains the exclusive right "to distribute … to the public by sale or other transfer of ownership, or by rental, lease or lending." 17 U.S.C. § 106(3); Island Software and Computer Service, Inc. v. Microsoft Corp., 413 F.3d 257 (2d Cir. 2005). The unauthorized distribution of a copyrighted work constitutes an independent infringement. Adobe Systems, Inc. v. Brenengen, 928 F. Supp. 616 (E.D. N.C. 1996) (defendant made unauthorized rental, lease, or lending of copyrighted software for purposes of commercial advantage).

Copyright Infringement Remedies:

Should TTG pursue its legal remedies and prevail in court, MGM and Mr. Beesley will likely be liable under a federal copyright infringement claim and be entitled to actual damages plus any of MGM's profits that are not reflected in TTG's damages, and possibly costs.  TTG may also seek and be entitled to preliminary and permanent injunctive relief. 17 U.S.C. §§502; 505.

Breach of Licensing Agreement against MGM:

Without dispute, MGM has exceeded its contractual rights under the Agreement. The provisions of the Agreement demonstrate an unambiguous intent of the parties for MGM to "access and use" TTG's software for MGM's business only.  Consider the following provisions:

- Recitals, C.: "MGM desires to purchase a license *to access and use* the Software and source code and utilize TTG's support services…" [emphasis added.]
- 1.2 Limitations on Use of Software: "MGM acknowledges that TTG shall retain sole and exclusive ownership of all rights, title, and interest in and to the Software including the copyright pertaining to the Software…"
- 1.2 Limitations on Use of Software:  "MGM agrees it will not sublicense, lease, or transfer the Software without the written authorization of TTG."
- 9.1 Confidentiality: ". . . MGM acknowledges that the Software and all documentation . . . concerning the Software whether disclosed orally or in writing shall be considered trade secret information."


**L**AW **O**FFICES OF **M**ERIAM **E**. **H**ANSEN

- 9.2 <u>Non-Competition</u>: "MGM acknowledges and agrees that it will not directly or indirectly license the Software, source code, and system access or system service to any of TTG's competitors."

MGM's breach of the Agreement supports a separate claim for breach of contract, entitling TTG to damages and attorneys' fees as the prevailing party in any action to enforce or interpret the contract. (Agreement, at paragraph 9.8).

Other Possible Tort Violations:

In addition, MGM's conduct may violate the following laws:

- Lanham Act, 15 U.S.C. §§1125 (a) and 1114 for sales and marketing of the THE*benefits*HUB with false and misleading representations as to its creation and ownership, and with a confusingly similar mark;
- California's Uniform Trade Secrets Act, California Civil Code 3426 et seq.;
- California's Unfair Competition Law, Business & Profession Code 17200 et seq.;
- Fraudulent inducement of the Agreement; and
- Tortious interference with prospective business relationships by the marketing, selling, licensing, and monetizing of THE*benefits*HUB as a competitor of TTG.

**Demand:**

Our client has been and will continue to be substantially and irreparably damaged should these violations continue. We therefore request that MGM and Mr. Beesley immediately cease and desist from ongoing marketing and sales of THE*benefits*HUB, or that it enter a business resolution with our client.

Specifically, in order to mitigate further damage to our client and for potential business resolution, the following actions on MGM's part are required:

1. MGM to immediately cease selling/sub-licensing THE*benefits*HUB or allowing brokers to use it for their benefits administration services;
2. MGM to provide TTG with a suitable working copy of the software to ascertain the scope of the copying;
3. MGM to display TTG's copyright in association with THE*benefits*HUB;
4. MGM to provide TTG with a copy of the agreement(s) MGM uses when it licenses or sells THE*benefits*HUB software to others;



**LAW OFFICES OF MERIAM E. HANSEN**

5. MGM to provide list of all brokers, third party administrators, group administrators, etc. who have licensed THE*benefits*HUB (this does not include employers who use MGM as an insurance broker and administration provider); and
6. MGM to provide TTG with an accounting of all sales revenue made to date from marketing THE*benefits*HUB to others.

Our client will appreciate your cooperation. This dispute can be concluded very quickly if your client acquiesces to the cease and desist demand *or* negotiates a satisfactory business resolution, which we would like to discuss very soon. Because the violations are indefensible, a negotiated resolution by your clients would certainly be in their best interest.

We look forward to your prompt response and, on behalf of TTG, remain available to discuss resolution.

Sincerely yours,

*Meriam E. Hansen*

Meriam E. Hansen, Esq.
Mina I. Hamilton, Esq.


cc:  client